The next case on the calendar for argument is United States v. Thompson. Counsel for Appellant, please approach and proceed. Good morning. Good morning, and may it please the Court, Tanya Culbertson on behalf of the United States. I'd like to reserve about two minutes for rebuttal, and I will watch the clock. All right. Thank you, Counsel. Paige Thompson carried out one of the largest and most notorious hacking schemes in United States history. She downloaded the personal identifying information of one-third of the United States adult population. She caused hundreds of thousands of dollars of loss. She intentionally damaged victims' computers, and she planted malware to mine thousands of dollars of cryptocurrency at her victims' expense. Then she bragged about her crimes online, and she blamed and mocked her victims. In response, the district court sentenced Thompson to time served of 100 days and probation. That sentence is substantively unreasonable. It cannot be located within the range of permissible decisions based on the totality of the circumstances of this case. Now, as the Court knows, government appeals for substantive reasonableness are exceedingly rare. We haven't brought one in the Western District of Washington since our office sought review 15 years ago in United States v. Rassam. I'm aware, I think, of only two other government appeals in the Ninth Circuit since Rassam. But this case, like Rassam, is the rare case where correction by this Court is necessary. The district court committed four principal errors in judgment in how it evaluated the evidence and weighed the sentencing factors. We have set those all out in our briefing, but I want to quickly talk through them here. First, the Court unreasonably assessed Thompson's history and characteristics, and it discounted evidence of her bad motives. And so what I mean specifically here is that rather than crediting Thompson's own descriptions of how she felt about what she was doing, all of her statements that are in the record from trial, the Court concluded instead that Thompson was, quote, The record flatly contradicts that. It is full of statements like, sorry, I'm not sorry, got them, smells like bacon, I'm 1,000 times more qualified than the IT people who are protecting the victims' computers. She even urged one of her friends, and this is shortly before, this was after she had contacted the Twitter user and sort of bragged about what she had done. She urged a friend of hers, said, you know, go ahead, if you want to play around in this Amazon Web Services data, go ahead, it's not my stuff, LOL. The District Court, again, just disregarded all of that evidence, did not explain how he was reconciling that with his finding that she was tortured and tormented. He also said that her Twitter messages were an attempt to get somebody to help. That is not a reasonable interpretation of the messages on their face. That Twitter exchange begins with Thompson's statement, says, Get an archive of my Twitter if you can, and remember my name. She talks about how she deserves to be exposed. This is her bragging, again, seeking notoriety, and so we think that, again, is just an unreasonable conclusion to draw from the record here. The District Court also ignored all of the violations of pretrial release that the government put forward at sentencing. The court simply did not address evidence that Thompson withdrew $45,000 of cryptojacking proceeds while she was on pretrial release, and also accessed computers and the Internet after she was convicted, but before she was sentenced. Again, the court said nothing about that, did not address that at all, or discuss how that might factor into any judgments about her contrition. Instead, the court said that it had seen Thompson evolving over the course of the trial. But again, this evidence in the record flatly contradicts that conclusion. In this respect, this case is like Rassam, because in Rassam, the District Court made a determination about the cooperation that Rassam had provided and drew unreasonable conclusions and ignored the fact that Rassam had actually not just withdrawn his cooperation in between the two sentencings, but had specifically done everything he could to undermine the convictions that had been obtained through his cooperation. What do we make of the fact that in the pre-sentence report, the sentence that was given, I believe, was one of the alternatives that was presented? It was actually a little bit lighter than one of the alternatives in one respect. Probation recommended as an alternative, said we don't usually do this, but as an alternative you could consider this probationary sentence with three years of home incarceration. And the District Court discussed the difference between home incarceration and home confinement and actually imposed home confinement, which is the less restrictive alternative of the two, which was not actually probation's recommendation. But I think it's important to note that probation's primary recommendation was for 24 months, and probation explained why that sentence was necessary to serve all of the sentencing factors, not just to account for Ms. Thompson's transgender status. I also want to point out a couple of things about the District Court's determination of the seriousness of these offenses. The District Court said that Ms. Thompson was not acting in a malicious way. Again, this ignores her own statements to the contrary, where she says, I'm not sorry for making these programmers look stupid. She says, go for it, it's not my stuff. She said, it's the user's fault. The only respect in which the District Court actually addressed those statements was to commend the defense for the way in which it had supported Ms. Thompson through the ordeal of having people pick through her messages. But other than that, the District Court just simply said nothing else about evidence of the seriousness. Well, I'm not sure that's actually true, because I read the transcript and the District Court said repeatedly that it was a terrible crime, that it was a serious crime, that it was a difficult case because he had to weigh all these different things. I think the record reflects that the District Court at one point said, I find that this is a terrible crime. But in doing so, the District Court was actually addressing the defense argument that because Ms. Thompson had not disseminated Capital One's data further, that she hadn't done anything bad. And he said, now, I'm not saying this wasn't a bad crime. I find it was a terrible crime. But she didn't disseminate it further, so that kind of doesn't really weigh in either direction in terms of sentencing. I think that in itself is an erroneous conclusion to draw from the evidence. I think Ms. Thompson did plenty of bad things when she entered these computer systems without authorization, when she downloaded the data, when she compressed and stored the data, and then manipulated the data, sorted it. And again, it completely ignores the other harms that she did through cryptojacking, that she did monetize through cryptojacking, and the District Court did not mention that aspect at all, did not mention the harm to any of the other victims. What do you make of the District Court's statement that she didn't do anything good or bad? I think, again, he was talking there probably about the dissemination. She didn't do anything good in that she didn't report the vulnerability. And so I think that is what the District Court was saying there. But then he said she didn't do anything bad by monetizing. And I think that overlooks the fact that she did monetize, and the very fact that she was holding onto this data for as long as she did for four months and was searching for server storage in Russia, searching for how to do credit card fraud. Those are indications that this was a serious crime. This was not just her stumbling upon this and not doing anything good or bad. Related to Capital One, I also just want to stress that the District Court, from the beginning of the proceedings to the end of the proceedings, seemed to minimize the harm to Capital One and somewhat blame the victims, saying things like, I've been making huge profits. It left itself vulnerable to this attack. It frittered away its money. It is a clear error of judgment to discount a victim just because that victim has a lot of money, but I think the record reflects that that is what the District Court was doing here. And, again, that ignores the harm to all of the other victims. There was testimony from four other companies that were impacted by this, and there were at least 30 companies whose data was stored on Ms. Thompson's computer. I see I'm running short on time, so I'd like to reserve the rest. All right. Thank you, Counsel. Thank you. Good morning, Your Honor, and may it please the Court. My name is Anne Wagner from the Federal Defender's Office in Western Washington, and I'm here on behalf of Paige Thompson. With me at counsel table is my co-counsel, Vicki Lai. The experienced District Court judge in this case, a former prosecutor, did not abuse his discretion by varying significantly downward from the advisory guidelines in this case. The government, the defense, and probation all urged the court to adopt a significantly below guidelines sentence,  This was a very unusual sentencing in terms of the nature of the offense, Ms. Thompson's incredibly difficult childhood, and history of a severe mental illness, including a psychiatric hospitalization during the pretrial phase of this case, as well as her status as a 5'11", 130-pound trans woman. Many of the complaints that the government is making here go to the explanation of the sentence, which is a classic procedural error, and the government has waived any complaints about the procedural reasonableness of this case in its opening brief. As to substantive unreasonableness, the government needs to show a clear error of judgment, which in Rassam was the fact that on resentencing, the judge gave the exact same sentence, even though the circumstances had changed entirely because Rassam had stopped cooperating, one of the main mitigating circumstances that led to the first sentence. There is no error of judgment like that in this transcript or in the judge's consideration of the totality of the circumstances, which included considering all the parties' submissions and thinking very deeply about this case, including thinking about an alternative sentence that differed from all the recommendations before even arriving at the sentencing hearing. Counsel, I find this sentencing transcript just to be odd. It's just different than most sentencing transcripts I've ever read and participated in. And I'm, you know, on that totality, what in that transcript can you point to that clearly demonstrates that the court was considering deterrence, considering the need for punishment, given the scale of this offense? What specifically can you point to? I get that certainly the court would have had the benefit of filings, but I'm not quite sure from that hearing what he communicates to say that he's weighing those in his calculus. Well, again, I want to emphasize that anything about the communication of the sentence is a procedural error. The explanation of a sentence is a procedural reasonableness evaluation. So we really... How do we... I'm not quite sure how to parse the argument that you're making. I mean, on a substantive reasonableness review, we're looking at the totality and making sure that the district court had in his mind all of the relevant factors and was considering them all as a holistic approach. And so my question is not so much procedurals. I'm looking at this transcript and I can't tell. Frankly, I'm not quite sure I can tell that all of the factors are being weighed. So I want to agree with you that the sentencing transcript is unusual. I think that the judge was considering more than just the sentencing, but the participation of all of the participants in the legal process that led up to this sentencing and acknowledging everyone's contributions. And I think that's what the moral arc leading towards justice was really referring to. And it wasn't particular to Ms. Thompson at all. But the judge discussed many of the 3553A factors and had clearly thought about it. I mean, coming up with his own sentencing recommendation... It wasn't clear that he had thought about all of the factors. In the record, it wasn't clear to me that he had thought about all of the factors because he didn't articulate. Because he didn't articulate them. And that's procedural reasonableness explanation. When we're looking at the substantive reasonableness, we look at the entire record to see if we can gauge why this substantial deviation that's almost unheard of was done. And it's troubling. Generally, as a district court judge, if you're going to deviate from the guidelines to that degree, you cross all your T's and dot out your I's. You make sure that the reason that you're doing it is laid out in excruciating detail so as to not have this type of challenge. That certainly would be preferable. I want to note that the Supreme Court in Gall v. United States noted that a sentence of probation will always be an 100% departure. They were using departure language at the time because it was pre-Booker. So when you are listening to the government's arguments about percentages, that's really reflecting that there was a probation sentence here other than the 100 days. But the probation sentence included three years of home incarceration, which for this severely mentally ill client is a very difficult time. It is a significant limitation on liberty, as the Supreme Court said in Gall. And it is not to be sneezed at. In addition, every single party at this sentencing urged a huge downward variance from the guideline sentence, including the government. So the government was recommending something like a third of the guideline sentence that they had calculated. The question of did the district court judge consider deterrence, I'm looking at the district court's explanation of the decision, and I see him say, and the question of what is justice here is a really, really hard question. Mr. Friedman, who I understand was the prosecutor, is absolutely right. There are some people out there who are looking at the cost-benefit analysis and saying, man, if I can get away with credit for time served of 100 days with the possibility of making a couple hundred million dollars with this, I'm going to take the chance. It's not like a crime of passion that happens when people are not considering those things. So it's an absolutely appropriate argument for the government to make. So I understood that to be as the court was considering the deterrence argument that the government was making. I'm not sure how else to, I mean, was there more that was required to consider deterrence? I think that reflects consideration of the deterrence argument, absolutely. And one thing that the government didn't bring up when they were, when my friend was discussing the sentence was the $41 million restitution obligation, which especially when you're talking about a cost-benefit analysis and making a few million dollars, being forced to owe $41 million when this process is over is deterrence. That's the definition. But that means that you're basically a deterrence if you're essentially judgment-proof? Well, if you're essentially judgment-proof, then you're going to be under that obligation for your entire life. It doesn't go away just because you have $0 in your pocket at a given time. And the government specifically said, you know, Ms. Thompson may eventually sell her story to the media and be able to pay back that restitution. But it doesn't go away because you're judgment-proof. On the deterrence issue, the court did say that some people may look at this and think that it's in essence a slap on the wrist. But did the court explain why it wasn't? Why this sentence would have a deterrent effect? I think you can see the judge's consideration of that factor in its response to the government. You can see it in the brief. What was the government, what was the judge's response as to why this sentence would have a deterrent effect? I think what the judge said was that there was a risk of a lack of a deterrent effect, and he was thinking about that. But he chose a sentence that he believed fulfilled all the 3553A factors, including deterrence. But he didn't articulate why this particular sentence would have a deterrent effect on this particular defendant or on other defendants who might be considering a similar crime. I'm not sure that he said, he explained why this would happen. But think about $41 million that you owe when you've made $10,000, as the government said, from the cryptocurrency. Did the district court judge say that? I'm sorry? Did the district court judge say that? The district court did pronounce sentence including restitution in a later sentencing hearing. I understand that, but we're talking about the district court's discussion of deterrent effect. Did the district court say that the imposition of the $41 million would deter this defendant and future defendants from similar crimes? Well, the district court judge wouldn't have done that at this sentencing hearing because the restitution amount was to be determined. But everybody in the proceedings knew that there would be restitution owed, and they were fighting about the amount. You made the point before that everybody was recommending a substantial departure, or variance, I guess is the word now. We have information that has been presented to us in terms of similar cases and similar sentences that have been given in those cases. And from what I can tell, departure downward is common in this fact scenario if you have someone who doesn't have a criminal history. But in the information that I've read on that, it seems that the practice is to nonetheless give a custody sentence of some period of time, and it seems to be somewhere around the neighborhood of two years, which is what the recommendation was here. So that's a long lead-up, and you have time to answer the question, right? Thank you. The question is really what should we as the court do with that information about other cases that are somewhat similar to this in the sentences given in those cases? Well, I think you should specifically look at the sentence given to the co-defendant in FOD, which is cited by the government. That sentence, there was a sentence given to Kira Evans, who was FOD's co-defendant, who had benefited to the tune of $300,000 in that fraudulent scheme. And the same district court judge gave her a sentence of three years probation and no home confinement and no evidence of severe mental illness, as in this case. I take it, then, that your answer is the examples of similar cases is broad enough that there isn't one specific pattern. That's correct, and this particular judge has given no confinement sentences in severe white-collar fraud cases as well. All right. Thank you, counsel. Thank you. Just briefly, Your Honors. My friend on the other side is correct that district court judges are entitled to deference, but they are not entitled to blind deference. And what we are asking the court to do here is to review the district court's analysis and determine whether the district court's weighing was at least reasonable. What's the government's position in terms of what we should do with the sentences that have been given in other similar cases? I think Your Honor is right, and my friend on the other side is right, that everybody recommended a downward variance here. The downward variance that the government recommended is in line with, you know, typical downward variances. We provided data from 2022 that in a case like this with no criminal history, the average variance is about 50%, and our recommendation was seven years, which ended up being 50% of the low end of the guidelines range. Now, I do not know the details of Mr. Fodd's co-defendant's conviction, but I would suspect that the record does not support the same kinds of direct evidence of bad intent, intentional behavior over the course of many months. You know, Ms. Thompson repeatedly revisited the victims that she had hacked. She checked that she still had access. She set up back doors so that she could get in even if they fixed it. So, I mean, the judge was at the trial, not us. Yes. The judge made a decision about his understanding. Normally, when we're reviewing for sentence substantive reasonability, the sides are reversed here. So I wanted you to just let me know if this was the flip side and a judge had granted an upward departure more than even what perhaps the prosecution was asking for and more than what was, you know, perhaps in comparable cases based on the judge's determination that the special circumstances of that case, that their judgment of, you know, the defendant's culpability and, you know, lack of contrition warranted an upward departure, and there was a dispute about all of those things and the judge's weighing and interpretation of the record. Would you say then that that, you know, we should strike that down as an abuse of discretion? Again, I can't speak to whether the government would choose to appeal in that particular circumstance depending on, you know, how the court conducted its weighing and what it gave as its reasons for why it varied above. I think that the best I can do here is ask the court to look at the record here and determine whether the weighing that the district court did here was reasonable in light of all of the sentencing factors, including deterrence, which Your Honors have talked about quite a bit with my friend on the other side. All right. Thank you, counsel. Thank you very much. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, FORREST, SUNG